UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CONNIE GIBBS
on behalf of herself and others similarly
situated

    Plaintiff,

v.

SEDGWICK CLAIMS MANAGEMENT
SERVICES INC., a Foreign for Profit
Corporation,

    Defendant.
_____/

CASE NO.: 6:21-cv-00202-GAP-GJK

FLSA COLLECTIVE ACTION

## JOINT RENEWED MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff, CONNIE GIBBS ("Representative Plaintiff") and Defendant, SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. ("Defendant"), by and through their respective undersigned counsel, jointly move the Court to approve the settlement reached by the parties in this suit instituted under the Fair Labor Standards Act and in support thereof, state:

1. The initial Complaint in this action was filed on January 29, 2021. (Doc. 1). The Second Amended Complaint was filed on August 3, 2021. (Doc. 48). In both Representative Plaintiff's initial Complaint and Second Amended Complaint, Representative Plaintiff alleged unpaid overtime compensation was due to her, and

1

those similarly situated, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §201, *et seq.* ("FLSA").

2. The parties jointly moved for conditional certification of this case as a collective action and on November 17, 2021 (Doc. 60), the motion was granted. (Doc. 61).

3. Various "Consent to Join" forms (hereinafter, "Opt-In forms") were filed with the Court.

4. During the litigation, the parties litigated and negotiated this action culminating in a settlement, deemed by the parties to be fair and equitable. Also, although at a certain point in the case a stay was issued, Sedgwick produced voluminous records purportedly showing the times Representative Plaintiff and Opt-In Plaintiffs logged on and off of systems utilized to perform their jobs. Both sides extensively analyzed these log on and off records to formulate their own respective damage models which they then utilized to engage in negotiations and resolve the case.

5. The parties attended mediation on October 13, 2022; and, continued to negotiate in the weeks following. A settlement was ultimately reached by the parties. (Doc. 79).

6. Given Defendant and the Representative Plaintiff have successfully come to an agreement to resolve this case, they now seek approval of the settlement from the Court.

7. Previously, the parties filed a Joint Motion for Approval of Settlement on November 15, 2022. (Doc. 81). This filing included a request for a Service Award as part of the settlement and also requested that this Court retain jurisdiction.

8. On March 29, 2023, this Court issued an Order denying the previously filed motion without prejudice and directed the parties to file a renewed motion. (Doc. 85). In doing so, the Court detailed issues with the requested Service Award and with the request that this Court retain jurisdiction. (Id.)

9. A copy of the Settlement Agreement between the parties is attached as Exhibit "1." Attached to the Settlement Agreement are four (4) exhibits. The first, Exhibit A is a Notice of Settlement of Lawsuit notifying the Representative Plaintiff and Opt-In Plaintiffs of the settlement of this lawsuit and their rights. This Exhibit has been amended to correct the total settlement amount and remove reference to the Service Award pursuant to this Court's March 29, 2023, Order. (Doc. 85). Exhibit B is the breakdown of the amounts to be paid to the Representative Plaintiff and Opt-In Plaintiffs. Exhibit C is the Release of Claims Form that Representative Plaintiff and Opt-In Plaintiffs will be required to timely sign and return to receive payment under the terms of the Settlement Agreement. Also attached is Exhibit D, the Fully Executed Addendum to the Settlement Agreement. This Addendum corrects the deficiencies including removal of references to the Service Awards and that the Court would retain jurisdiction, pursuant to this Court's March 29, 2023, Order. (Doc. 85).

10. The settlement provides that, as approved by the Court, Defendant will pay the following amounts in consideration for the release of Representative Plaintiff's and Opt-In Plaintiffs' claims and dismissal of the case with prejudice: (1) $159,000.00 (the

"Payment Amount") will be paid to the Representative Plaintiff and Opt-In Plaintiffs distributed specifically pursuant to Exhibit B to the Settlement Agreement if they timely sign and timely return the Release of Claims Form within the timeframe required by the Settlement Agreement, with Defendant retaining any funds not distributed to any Opt-In Plaintiffs who do not timely sign and return a Release Form; (2) up to $80,000.00 will be paid in attorney's fees and in costs by Defendant to Collective Class Counsel; and, (3) Defendant will pay an additional amount of $2,640.00 as reimbursement for Representative Plaintiff's one-half of the mediator's fee. Thus, the total settlement amount shall not exceed $241,640.00.

11.  In exchange for all payments made under the terms of the Settlement Agreement and Release, Representative Plaintiff and Opt-In Plaintiffs who timely sign and return Release Forms agree to release Defendant from their claims under the Fair Labor Standards Act, including overtime compensation, liquidated damages, interest, attorney's fees, and litigation expenses.

12.  For any Opt-In Plaintiffs who do not return release forms, no payment shall issue and no claims shall be released. Those Opt-In Plaintiffs' amounts will be retained by Defendant. Pursuant to the Settlement Agreement, Defendant retains the right to nullify the Agreement if (1) the Representative Plaintiff fails to timely sign and return the Release Form, or (2) if Opt-In Plaintiffs representing more than fifty percent (50%) or more of the Payment Amount fail to timely sign and return Release Forms. In the event Defendant nullifies the Agreement due to lack of participation, it is agreed in

the Settlement Agreement that the parties will return to their same positions in the lawsuit without prejudice to either party. The parties agree to immediately notify the Court once all terms hereunder are met by filing a Joint Motion for Dismissal with Prejudice as set forth in paragraphs fifteen (15) and sixteen (16) below.

13. As described more fully below, Defendant and Representative Plaintiff agree this is a fair and reasonable settlement of a bona fide dispute as to Representative Plaintiff and Opt-In Plaintiffs' unpaid overtime claims under the Fair Labor Standards Act as settled pursuant to the Parties' Settlement Agreement.

14. The parties are submitting this Motion and the Settlement Agreement, Addendum, and Release to the Court for a determination that there has been a "fair and reasonable resolution of a bona fide dispute," with respect to Representative Plaintiff and Opt-In Plaintiffs' overtime claims under the Fair Labor Standards Act.

15. The Parties request that, upon a finding that the Settlement Agreement is fair, that this Court issue an Order dismissing the case without prejudice.

16. Upon completion of the notice, release and payment provisions of the settlement, the Parties will file a Joint Motion for Dismissal, with prejudice, of the claims of the Representative Plaintiff and Opt-In Plaintiffs who have signed and timely returned release forms. The parties will submit a proposed order for dismissal with prejudice of those individuals, listing the Representative Plaintiff and Opt-In Plaintiffs that have released their claims.

## MEMORANDUM OF LAW

I. **Standard of Review.**

This action arises under the FLSA. In *Lynn's Foods Stores, Inc. v. U.S. Department of Labor*, the Court held that when an employee brings "a private action for back wages . . . and present[s] to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d 1352 (11th Circ. 1982).

Before approving an FLSA settlement, the court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1355. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

There is a "'strong presumption' in favor of finding a settlement fair." *Hamilton v. Frito-Lay, Inc.*, 2007 U.S. Dist. LEXIS 10287, at *4 (M.D. Fla. Jan. 8, 2007) *citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

    (1)    the existence of fraud or collusion behind the settlement:
    (2)    the complexity, expense, and likely duration of the litigation;
    (3)    the stage of the proceedings and the amount of discovery completed;
    (4)    the probability of plaintiff's success on the merits:
    (5)    the range of possible recovery; and
    (6)    the opinions of the counsel.

*Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).

## II. There Is A Bona Fide Dispute As To Plaintiffs' FLSA Claims and All of the Relevant Criteria Support Final Approval of the Settlement.

In *Dees v. Hydradry, Inc.*, the Court first analyzed "internal factors" to determine if a compromise of an overtime claim was fair to the employee and required the parties seeking approval of the compromise to describe the nature of the dispute including the employer's reasons for disputing the employee's right to compensation and the employee's reasons for believing the disputed wages were due. 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).

In this case, Representative Plaintiff and Opt-In Plaintiffs (collectively, "Plaintiffs") asserted claims for unpaid overtime under the FLSA for the time period during which they worked in the salaried exempt position of Return-to-Work Specialist during the three year lookback period. Defendant contends, and Plaintiffs deny, that Plaintiffs were employed in a bona fide administrative capacity and were, therefore, exempt employees under the FLSA pursuant to 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.200, et seq. There is bona fide dispute as to whether the Administrative Exemption applies to Plaintiffs. These issues were contested between the parties giving rise to litigation.

During the relevant time period, Plaintiffs were not required to track the number of hours they worked, nor did Defendant track their hours with a timekeeping system, and therefore Plaintiffs had to estimate the number of hours worked during their employment, relying on their memories and inferences drawn from vast amounts

of data produced by Defendant, such as the times they logged on and off of Defendant's phone and computer systems. Defendant disputed Plaintiffs' estimates, pointing to discrepancies in the number of hours claimed and drawing conflicting inferences from the electronic data available. As such, there was a clear dispute between the parties concerning the actual number of hours worked by the allegedly misclassified Plaintiffs. During settlement negotiations, which included a formal mediation, and extensive informal settlement negotiations, Representative Plaintiff and Defendant spent numerous hours to come to a fair and equitable settlement that took into account the large divide between Plaintiffs' position and Defendant's position as to the likelihood of success on the merits and Plaintiffs' hours worked, as well as other highly contested issues such as the applicable statute of limitations based upon allegations of willfulness and the separate issue of liquidated damages, which Defendant denied were warranted.

After carefully and thoroughly considering the above information, Defendant and the Representative Plaintiff agreed to compromise the FLSA claims of all Plaintiffs for the time period during which they worked as salaried exempt Return-to-Work Specialists from January 29, 2018 through May 7, 2022, based upon a number of factors pertaining to these issues. In the course of extensive settlement negotiations, Defendant and Plaintiffs utilized their respective analyses to come to an agreeable, fair and equitable settlement amount. As a result, the settlement was a compromise between Plaintiffs' calculations and Defendant's calculations. The parties negotiated

through a mediation and extensive informal settlement discussions to come to an agreeable and equitable compromise between the parties' positions.

In addition, the parties also developed and mutually agreed to a distribution of the settlement amount, using certain factors to calculate the pro-rata distribution of the settlement proceeds amongst the Plaintiffs. In this regard, the following factors were utilized: (i) Estimate of the number of weeks a Plaintiff worked as a salaried exempt Return-To-Work Specialist during the relevant time period based upon discovery in the case; (ii) Estimate of the number of weeks worked by a Plaintiff during the class time period taking into account any leave taken by a Plaintiff based upon discovery in the case; (iii) when a Plaintiff opted into the lawsuit; (iv) Each Plaintiff's rate of pay based upon discovery in the case; (v) Estimate of hours a Plaintiff worked in any given work week based upon Plaintiffs' estimate of hours as well as discovery in the case; (vi) analysis of log on and off records for systems within which Plaintiffs worked to perform their jobs; (vii) analysis of witness information pertaining to the efficiency and productivity of Plaintiffs; and, other factors related to the legal risks associated with continued litigation and trial. The amounts paid to the Representative Plaintiff and Opt-In Plaintiffs pursuant to the pro-rata distribution is captured in Exhibit B to the Settlement Agreement. Pursuant to the Settlement Agreement authorized by the Representative Plaintiff, the payment amounts the Representative Plaintiff and Opt-In Plaintiffs will receive, if they sign and return releases, range from $2,290.44 to $30,265.00, and were based upon a variety of factors detailed above,

including the risks of continuing to litigate.

In evaluating a compromise, the Court should also consider an array of "external" or contextual factors pertinent to the statutory purpose of the FLSA. *Dees*, 706 F. Supp. 2d at 1243-1244. Compromise may be permissible if, for example, the FLSA issue in a case is unresolvedly close on the facts or the law. *Id.* at 1244. Here, the parties agree that there is a bona fide dispute as to whether Plaintiffs were exempt employees that cannot readily be resolved based on the facts of the case or the law.

Turning to the specific factors set forth in *Leverso*, courts have found no fraud or collusion where both parties were represented by counsel and the amount to be paid to the plaintiff seemed fair. *See Helms v. Central Fla. Reg. Hosp.*, 2006 U.S. Dist. LEXIS 92994, *11-12 (M.D. Fla. Dec. 21, 2006). Here, each party was independently represented by counsel. Plaintiffs were represented by Lytle & Barszcz, P.A. and Defendant was represented by WILSON TURNER KOSMO LLP and SANCHEZ-MEDINA, GONZALEZ, QUESADA, LAGE, GOMEZ & MACHADO LLP. Each attorney has extensive experience in litigating claims under the Fair Labor Standards Act, including claims for unpaid overtime compensation. Each counsel was obligated to and did vigorously represent their respective clients' interests.

The complexity, expense, and length of continuing this litigation also militate in favor of this settlement. Plaintiffs and Defendant continue to strongly disagree over the merits of the claims asserted by Plaintiffs. As noted above, Plaintiffs contend Defendant misclassified Plaintiffs as exempt, and did not pay them overtime

10

compensation to which they were entitled. Defendant maintains that Plaintiffs were properly classified and were paid all wages owed. If the parties continued to litigate this matter, they would be forced to engage in further costly litigation and a lengthy trial. Thus, an ultimate resolution for each Representative Plaintiff and Opt-In Plaintiff could involve trial time anywhere from two weeks to a month or more including the damages phase. Nor is there any guarantee that Plaintiffs would prevail at trial. The administrative exemption is an inherently subjective and fact-specific standard that makes any outcome uncertain. An appeal of any verdict favorable to Plaintiffs could further risk or delay receipt of any proceeds from the litigation. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

There has been more than sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The parties exchanged voluminous amounts of information. In agreeing upon the proposed settlement, the parties had an abundance of information and conducted an extensive investigation to allow them to make an educated and informed analysis and conclusion.

Plaintiffs' probability of success on the merits and the uncertainty of the amount they may have recovered, based on the number of overtime hours they could prove and whether damages would be calculated at half-time or time-and-a-half, the statute of limitations based upon whether there was willfulness, and the issue of liquated damages further suggest that this settlement is fair and appropriate. As noted

previously, Plaintiffs assert that Defendant did not pay them overtime compensation to which they were entitled. Defendant maintains that Plaintiffs were properly classified as exempt and were paid all wages owed to them. In addition to the risks associated with exemption issues, the range of possible recovery by Plaintiffs is also open to dispute based on the proof of hours worked and method of calculating damages, as well as the applicable statute of limitations and availability of liquidated damages. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and exercise of resources by both parties, the exact amount of their recovery is uncertain.

### III.   Attorneys' Fees and Costs.

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorneys' fees. *See Helms*, 2006 U.S. Dist. LEXIS 92994, at *6-7.

In *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009), the Honorable Gregory A. Presnell held: "In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery

was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Id.* at 1228. Judge Presnell maintained that if the matter of attorney fees "[is] addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Id. See also e.g. Cooney v. Collegiate Prep Realty, LLC*, 2018 U.S. Dist. 174294 (M.D. Fla. September 21, 2018); *Buntin v. Square Foot Mgmt. Co., LLC*, 2015 U.S. Dist. LEXIS 68287 (M.D. Fla. May 27, 2015); *Sexton v. Macro,* 2016 U.S. Dist. LEXIS 77892 (M.D. Fla. June 10, 2016).

In the instant case, subject to Court approval, Defendant agreed to pay Plaintiffs' Counsel up to $80,000.00 in fees and costs and pay Plaintiffs' portion of the mediator fees which total $2,640.00. The attorneys' fees were agreed upon separately and without regard to the amount paid to Plaintiffs. In addition, Plaintiffs' recovery was not compromised in any way by the amount paid in attorney's fees and costs. Also, given the complexity of the case due to the exemption defense and the tenacity of the defense, counsel for the parties agree that the amount of attorneys' fees and costs recovered by Plaintiffs' counsel for this litigation is reasonable.

## **NO OTHER AGREEMENTS**

In addition to the foregoing, there are no other settlement agreements between the parties other than the FLSA Settlement Agreement with its Addendum attached hereto. There is also no general release between the parties.

Accordingly, because the settlement is reasonable on its face and Plaintiffs' recovery was not adversely affected by the amount of the fees paid to their attorney, the Court should approve the settlement.

## CONCLUSION

The FLSA settlement terms are fair, reasonable and adequate. Accordingly:

1. The Parties request that, upon a finding that the Settlement Agreement with its Addendum is fair, the Court issue an Order dismissing the case without prejudice.

2. Upon completion of the notice and release provisions of the settlement, the Parties will file a Joint Motion for Dismissal, with prejudice, of the claims of Representative Plaintiff and Opt-In Plaintiffs who have signed and timely returned Release Forms. The parties will submit a proposed order for dismissal with prejudice of those individuals, listing the Representative Plaintiff and Opt-In Plaintiffs that have released their claims.

Respectfully submitted on this 11th day of April, 2023.

| | |
|---|---|
| LYTLE & BARSZCZ, P.A.<br>533 Versailles Drive<br>2nd Floor<br>Maitland, FL 32751<br>Telephone: (407) 622-6544<br>Facsimile: (407) 622-6545 | WILSON TURNER KOSMO LLP,<br>402 West Broadway<br>Suite 1600<br>San Diego, CA 92101<br>Telephone: (619) 236-9600<br>Facsimile: (619) 236-9669 |

By:*/s/ David V. Barszcz*
David V. Barszcz, Esq.
Florida Bar No. 750581
dbarszcz@lblaw.attorney

Mary E. Lytle, Esq. Florida Bar No. 0007950
mlytle@lblaw.attorney
Attorneys for Plaintiffs

By:*/s/ Robin A. Wofford*
Robin A. Wofford, Esq.
California Bar No. 137919
rwofford@wilsonturnerkosmo.com

Lois M. Kosch, Esq.
California Bar No. 131859
lkosch@wilsonturnerkosmo.com

Michaela P. Delacruz, Esq.,
California Bar No. 292724
mdelacruz@wilsonturnerkosmo.com,

Nicole R. Roysdon, Esq.,
California Bar No. 262237
nroysdon@wilsonturnerkosmo.com

 and

SANCHEZ-MEDINA, GONZALEZ, QUESADA, LAGE, GOMEZ & MACHADO LLP,
1200 Brickell Avenue,
Ste. 950,

Miami, FL 33131
Telephone: (305) 377-1000
Facsimile: (855) 898-1359

By:/s/ *Chad K. Lang*
Chad K. Lang, Esq.
Florida Bar No.: 156922
clang@smgqlaw.com

Attorneys for Defendant